IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| TONY MCNEAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-4090-CV-C-ODS-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

ORDER AND OPINION AFFIRMING
<u>COMMISSIONER'S FINAL DECISION DENYING BENEFITS</u>

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born March 25, 1974, and has completed his GED. He has work experience as a construction worker, laborer making steel wheels, and laborer making toolboxes. R. 72. Plaintiff alleges he became disabled on December 14, 2008, due to HIV, as well as pain in his lower back, right shoulder, and knees.

On January 24, 2008, Plaintiff saw Dr. John C. Wendt and reported low back pain due to a work-related injury. R. 231. Dr. Wendt placed Plaintiff on bed rest with a heating pad and prescribed pain medication. R. 231. Four days later, Plaintiff saw Dr. Wendt for a follow-up and was diagnosed with a low back strain. R. 231. Dr. Wendt referred Plaintiff to physical therapy and released him to light duty work with no lifting greater than 25 pounds and no bending at the waist or overhead work. R. 231.

On April 15, 2008, Plaintiff went to the University of Missouri Hospital and Clinic ("University Hospital") to establish care for his HIV and underwent viral load testing. R.

256-57, 263, 265. The hospital records noted that Plaintiff was first diagnosed with HIV in 1999. R. 256. Plaintiff returned to the University Hospital three more times in 2008 to follow up on his HIV. R. 233-34, 246, 304. Plaintiff was asymptomatic at each visit. R. 234, 247, 305.

On May 15, 2009, Plaintiff presented at the Bothwell Regional Health Center reporting dizziness, blurred vision, and head pressure. R. 272. Plaintiff was diagnosed with tick borne illness and prescribed medications. R. 274-75.

On June 2, 2009, and August 4, 2009, Plaintiff returned to the University Hospital for a HIV follow-up. R. 299, 318-21. Plaintiff began highly active antiretroviral therapy ("HAART therapy") and tolerated the medicine reasonably well. R. 301, 320.

On August 13, 2009, Plaintiff presented for treatment of his low back pain at the Columbia Orthopaedic Group with Dr. Matt Thornburg. R. 340-41. A MRI on Plaintiff's lumbar spine revealed minimal degenerative disk disease, disk space narrowing, and central disk osteophyte complex. R. 340, 332. Dr. Thornburg recommended therapy and an epidural steroid injection. R. 339. Plaintiff received epidural injections on September 14, 2009, and October 7, 2009. R. 342, 345-46.

On October 21, 2009, Dr. Ruth Stoecker with Disability Determination Services conducted a case analysis and opined that there was limitation to physical functioning demonstrated in the medical record. R. 330.

On November 19, 2009, saw Dr. John Miles at the Columbia Orthopedic Group and reported low back pain with radiation in the right lower extremity down to the knee. R. 335-36. Dr. Miles placed Plaintiff on a 25 pound weight restriction with no repetitive bending, twisting, or stooping and also restricted Plaintiff from prolonged sitting or standing. R. 336. Plaintiff again saw Dr. Miles on December 1, 2009, and still reported pain. R. 334. Dr. Miles noted "[w]e'll place him on no permanent work restrictions," but noted that Plaintiff had a 2% permanent partial disability. R. 334.

On April 30, 2010, Plaintiff saw Dr. Ravinder Arora for a back and leg pain evaluation. R. 356. Plaintiff reported that his epidural injections were not helping the pain and that he experienced radiating symptoms to lower extremities. R. 356. MRI results showed that Plaintiff's pelvis was normal. R. 349. An EMG revealed bilateral

2

L4/5 radiculopathy. R. 352-55. Dr. Arora recommended physical therapy of the low back including heat, ultrasound, and massage daily for two weeks. R. 352.

On June 2, 2010, Plaintiff saw Dr. Arora again for treatment of his back and leg discomfort. R. 351. Dr. Arora referred Plaintiff two physical therapy programs and prescribed him with medications and an epidural injection. R. 351. Plaintiff underwent the epidural injections on June 21 and July 12, both in 2010. R. 370-73.

On July 13, 2010, the Division of Family Services referred Plaintiff to Marsha Kempf, a nurse practitioner who works under the direction of a psychiatrist, Robert Frick, M.D., for a psychiatric evaluation. R. 43, 359-363. Plaintiff was examined solely by Ms. Kempf and was never was examined by Dr. Frick. R. 69-70. At Axis I, Plaintiff was diagnosed with severe post traumatic stress disorder ("PTSD") and ADHD. R. 361. At Axis II, Plaintiff was diagnosed with a personality disorder, second to PTSD. R. 361. It was recommended that Plaintiff receive long-term psychiatric care, but Plaintiff was not prescribed any medication. R. 70, 361. Ms. Kempf endorsed that Plaintiff had a mental disability, which prevented him from engaging in employment or gainful activity for which his age, training, experience, or education would fit him. R. 363.

An administrative hearing was held on August 19, 2010. R. 35. Initially, Plaintiff testified that he had taken medication for his HIV since he was diagnosed in 1999. R. 39-40. Then, Plaintiff testified he had been asymptomatic and conceded that he was not prescribed HIV medication until June 2009. R. 41. Plaintiff denied ever being hospitalized overnight in the last five years. R. 42. Plaintiff testified that his lower back pain began in January 2008 after a work-related injury. R. 44. Plaintiff said he never received physical therapy for his back pain. R. 45-46. He takes pain medication for his back and has received epidural injections. R. 45-46. Plaintiff testified that he never sought mental health treatment until July of 2010 when he was examined by Ms. Kempf, a nurse practitioner. R. 43, 69. Plaintiff testified that Ms. Kempf did not suggest that Plaintiff take any mental medication and that he was never evaluated by Dr. Frick. R. 70. With regard to Plaintiff's functional limitations, he can sit and stand for 10-20 minutes at a time, walk approximately 100 feet, and lift 15-20 pounds at a time. R. 46. Plaintiff needs periods between alternating between sitting and standing. R. 67. Plaintiff

3

lives alone, watches television, builds model car, visits with his son, and does chores around his parents' house. R. 36, 47, 49-50.

At the conclusion of claimant's testimony, the administrative law judge ("ALJ") informed Plaintiff's counsel that the record would be held open for thirty days after the hearing. R. 72. The Record before this Court contains medical records during this thirty day time period, as well as records after the administrative record was closed. While the record was still open, Plaintiff went to the University Hospital on September 9, 2010, for a follow-up and reported fatigue, low energy, frequent urination, sleeping less, some intermittent palpitations, and hallucinations. R. 408-09. Dr. Zeimet noted Plaintiff's HIV medication caused the hallucinations and switched him to a different medication. R. 410. Dr. Zeimet also noted atypical chest pain and considered referring Plaintiff to cardiology if it continued. R. 411.

On September 20, 2010, Plaintiff presented at the University Hospital reporting painful palpitations, which occurred after he had an argument with his brother. R. 403. Dr. Zeiment reviewed an ECG test and ordered that Plaintiff undergo a stress echocardiogram. R. 406. Dr. Zeimet assessed that Plaintiff had palpitations with normal TSH and atypical chest pain with the following risk factors: hypertension, hyperlipidemia, tobacco use, and his gender. R. 406.

After the administrative record was closed, the ALJ issued his decision on September 21, 2010. R 10-23. At step one of the five-step sequential process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since December 14, 2008. R. 12. At step two, the ALJ found Plaintiff had the following severe impairments: HIV, musculoskeletal (back) pain, hypertension, and post-traumatic stress disorder ("PTSD"). R. 12. At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. R. 13. At steps four and five, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) (e.g. five days a week job, 8 hours per day, day after day, week after week, month after month, with a ½ hour lunch break and a ¼ hour break in the morning and in the afternoon) with an ability to lift and carry 20 pounds occasionally and 10 pounds frequently, walk for 4 of eight hours in a full eight hour day and requires a sit/stand option at will. His ability to push/pull and fine/gross dexterity is unlimited. He is able to occasionally

4

climb stairs, but is precluded from ladders, ropes, scaffolds, or running. He can occasionally bend, stoop, crouch, crawl, balance, twist, and squat. He requires limited exposure to heights, dangerous machinery, and uneven surfaces. He is able to get along with others; understand simple instructions; concentrate and perform simple tasks; and respond and adapt to workplace changes and supervision, but in a limited public/employee contact setting.

R. 16. Next, the ALJ found, based on the vocational expert's testimony, that Plaintiff was unable to perform any past relevant work, but considering his age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. R. 21-22. Finally, the ALJ concluded Plaintiff was not disabled. R. 23.

After the ALJ issued his decision, Plaintiff again presented to the University Hospital on October 28, 2010, for an assessment of his HIV and chronic low back pain with Dr. Zeimet. R. 385-88. In a medical source statement completed the same day, Dr. Zeimet opined Plaintiff had various limitations including: a positive straight leg raise on the right; very limiting flexing, rotating, and extension in the lumbar spine; and flat lordosis with marked tenderness on palpitation in the lumbar spine; depression, anxiety, and physical conditions that affected Plaintiff's conditions. R. 415-16. Dr. Zeimet opined that Plaintiff would be able to walk for 1-2 blocks without a break, sit for 10-15 minutes, and that he would need to elevate his legs at least 40-50% of the day. R. 417-18. Finally, Dr. Zeimet opined that Plaintiff's symptoms and limitations had been in place since Plaintiff's injury in January 2008 and that his condition would require him to be absent from work more than three times a month. R. 419.

Plaintiff presented for counseling with a psychiatrist, Mary Beagle, D.O., on three separate occasions in October of 2010. R. 424-29. Plaintiff was diagnosed with depression, anxiety, and ADHD. R. 431, 434, 456. Plaintiff reported on different occasions that he was irritable, depressed, anxious, paranoid, angry, and that he was hearing voices. R. 424, 426-28. He was assessed global assessment of functioning scores between 30-50. R. 424, 426, 528. On April 8, 2011, Dr. Beagle completed a mental medical source statement. R. 439-44. Dr. Beagle noted that Plaintiff had the following symptoms: poor memory, sleep disturbances, mood disturbance, emotional liability, delusions or hallucinations, psychomotor agitation or retardation, perceptual

5

disturbances, blunt or inappropriate affect, paranoid, feeling guilt/worthlessness, difficulty with thinking or concentration, generalized persistent anxiety, and hostility/irritability. R. 439-40. Dr. Beagle opined that Plaintiff would miss more than three times a month from work. R. 441. Out of 16 areas of functioning, Dr. Beagle opined that 10 areas McNeal had no useful ability to function in those areas. R. 442.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision "simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. DISCUSSION

Plaintiff argues that the ALJ (1) did not properly link his physical limitations in the RFC to a medical opinion (2) did not base his RFC to the substantial evidence of record, and (3) failed to further develop the record to better understand Plaintiff's limitations. Plaintiff also contends that the ALJ erroneously weighed or considered the opinions of Dr. Wendt, Dr. Stoecker, and Dr. Miles. Plaintiff's arguments are without merit.

First, an ALJ is not required to list every limitation along with a discussion of the evidence supporting it when determining Plaintiff's RFC. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Instead, the ALJ makes an RFC determination "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney*, 228 F.3d at 863. In this case, the ALJ identified substantial medical evidence supporting his RFC determination and accounted for Plaintiff's limitations by restricting him to light work with the ability to lift and carry 20 pounds occasionally and 10 pounds

6

disturbances, blunt or inappropriate affect, paranoid, feeling guilt/worthlessness, difficulty with thinking or concentration, generalized persistent anxiety, and hostility/irritability. R. 439-40. Dr. Beagle opined that Plaintiff would miss more than three times a month from work. R. 441. Out of 16 areas of functioning, Dr. Beagle opined that 10 areas McNeal had no useful ability to function in those areas. R. 442.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision "simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. DISCUSSION

Plaintiff argues that the ALJ (1) did not properly link his physical limitations in the RFC to a medical opinion (2) did not base his RFC to the substantial evidence of record, and (3) failed to further develop the record to better understand Plaintiff's limitations. Plaintiff also contends that the ALJ erroneously weighed or considered the opinions of Dr. Wendt, Dr. Stoecker, and Dr. Miles. Plaintiff's arguments are without merit.

First, an ALJ is not required to list every limitation along with a discussion of the evidence supporting it when determining Plaintiff's RFC. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Instead, the ALJ makes an RFC determination "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney*, 228 F.3d at 863. In this case, the ALJ identified substantial medical evidence supporting his RFC determination and accounted for Plaintiff's limitations by restricting him to light work with the ability to lift and carry 20 pounds occasionally and 10 pounds

frequently, walk for 4 of eight hours in a full eight hour day and requires a sit/stand option at will and by restricting him to climbing stairs, bending, stopping, crouching, crawling, balancing, twisting, and squatting occasionally. R. 16. The ALJ specifically addressed Plaintiff's treatment history, the objective clinical findings, Plaintiff's subjective complaints, and all of the medical opinions and evidence of record before making a determination on Plaintiff's RFC. R. 17-21.

Plaintiff first takes issue with the opinion of Dr. Wendt. Plaintiff argues that the "ALJ does not properly explain how [Dr. Wendt's] opinion is consistent with the record when the record reveals greater restrictions than Dr. Wendt was able to evaluate or even consider." Suggestions in Support (Doc. # 7), at 16. In sum, Plaintiff argues that the ALJ's reliance on Dr. Wendt's opinion is misguided because Dr. Wendt's opinion was given before Plaintiff underwent additional objective tests. The Court finds that Dr. Wendt's opinion is entitled to controlling weight because it is not inconsistent with the other substantial evidence. *See Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) ("[A] treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence."). Dr. Wendt released Plaintiff to light duty work with no lifting greater than 25 pounds, bending at the waist, or overhead work. Although Dr. Wendt did not have the benefit of reviewing Plaintiff's subsequent medical findings, the ALJ considered and provided a lengthy discussion of Plaintiff's subsequent medical findings before determining Plaintiff's RFC. R. 17-21.

Plaintiff also argues it was error for the Court to assign some weight to Dr. Stoecker's opinion—that Plaintiff did *not* have any limitations—because the ALJ concluded Plaintiff *did* have some functional limitations. For example, Plaintiff references the sit/stand option in Plaintiff's RFC. Although Dr. Stoecker found that Plaintiff did not have any limitations, Plaintiff testified at the administrative hearing that he needs periods between alternating between sitting and standing. R. 68. It is clear that the ALJ considered Plaintiff's subjection allegations when including an at-will sit/stand option in the RFC. An ALJ is permitted to consider all the relevant evidence— including the claimant's own descriptions of his limitations—when making an RFC determination. *McKinney*, 228 F.3d at 863

7

Next, Plaintiff contends it was error to assess great weight to Dr. Miles's opinion. Dr. Miles determined Plaintiff was considered 2% disabled under the Missouri Division of Worker's Compensation guidelines. Plaintiff argues the opinion did not set forth functional limitations, and only assessed a percentage of disability, which, Plaintiff argues, is not applicable to the RFC assessment. The Court disagrees. When Dr. Miles suggested that a 2% disability rating was appropriate, he stated "[w]e'll place him on no permanent work restrictions." R. 334. In considering the 2% disability, the ALJ correctly recognized that a Workers' Compensation disability rating is not binding on the Social Security Administration because the criteria applied by the two agencies are different. *See Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996) (whether a claimant is disabled under state law is not binding on the Commissioner of Social Security). The ALJ noted that the Workers' Compensation disability rating is "simply evidence that should be considered and assessed along with the overall record in its entirety." R. 20. The Court finds that the ALJ properly considered Plaintiff's 2% disability rating, along with other relevant evidence, when assessing Plaintiff's RFC.

Finally, to the extent Plaintiff contends the ALJ did not fully develop the record, the Court notes that the claimant has the burden of persuasion to demonstrate his RFC. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Dr. Zeimet's medical source statement—which was submitted after the record was closed and after the ALJ rendered an unfavorable decision—does not establish that the ALJ failed to develop the record, nor does it render the ALJ's decision unsupported by substantial evidence. Dr. Zeimet opinion stated, among other things, that Plaintiff had a positive straight leg raise on the right; depression, anxiety, and physical conditions that affected Plaintiff's conditions, that he would need to elevate his legs at least 40-50% of the day, and that Plaintiff's symptoms and limitations were in place since Plaintiff's injury in January 2008. R. 415-19. However, the Record shows Dr. Wendt released Plaintiff to light duty work in January 2008, Plaintiff only received epidural injections for his back pain, never underwent physical therapy after three doctors recommended it, was considered only 2% disabled under the Missouri Division

8

of Workers' Compensation guidelines, and was not considered to have a limitation in physical functioning according to Dr. Stoecker. R. 18-20, 45-46, 231, 330, 367.

Also, Dr. Beagle's opinion regarding Plaintiff's mental health does not establish that the ALJ erred by not fully developing the record. *See Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) (finding that the ALJ did not err by failing to order additional assessments where "there [was] no indication that the ALJ felt unable to make the assessment he did and his conclusion [was] supported by substantial evidence."). Here, there is substantial evidence to support the ALJ's decision to assign little weight to the mental health opinion offered by nurse practitioner Marsha Kempf. A nurse practitioner is considered an "other" medical source whose opinion is not accorded controlling weight. *Barton v. Astrue*, No. 09-6046-SJ-NKL, 2010 WL 1488117 (W.D. Mo. April 13, 2010) (citing Social Security Ruling 06-3p, 71 Fed. Reg. 45,593 (Aug. 9, 2006)). Prior to the hearing, Plaintiff had only presented for mental health treatment once—a month before the administrative hearing—when he was examined by Ms. Kempf. Although Ms. Kempf determined Plaintiff had a mental disability that prevented him from gainful activity, Plaintiff was never prescribed any mental health medication. The ALJ also reasoned Ms. Kempf's opinion was given little weight because she was not trained in mental conditions. R. 20. There was no need for the ALJ to order additional mental health assessments because there is no indication that he felt unable to make his assessment based on the evidence in the Record. Accordingly, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

## IV. CONCLUSION

There is substantial evidence in the Record to support the ALJ's decision. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

                                           /s/ Ortrie D. Smith
                                           ORTRIE D. SMITH, SENIOR JUDGE
DATE: March 7, 2013               UNITED STATES DISTRICT COURT